UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CRISTA N. HAIGHT-FENTON,  )  | CASE NO. 1:14CV93 |
| ) | |
| Plaintiff,  ) | MAGISTRATE JUDGE GEORGE J. |
| ) | LIMBERT |
| v.  ) | |
| ) | |
| CAROLYN W. COLVIN[1],  ) | MEMORANDUM OPINION AND ORDER |
| ACTING COMMISSIONER OF  ) | |
| SOCIAL SECURITY,  ) | |
| ) | |
| Defendant.  ) | |

Crista N. Haight-Fenton ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case to the ALJ for further articulation and analysis at steps four and five of the sequential analysis:

## I.  PROCEDURAL AND FACTUAL HISTORY

On March 22, 2010, Plaintiff applied for DIB, alleging disability beginning July 23, 2009. ECF Dkt. #13 ("Tr.") at 192-197.[2] Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015 ("DLI"). Tr. at 16. The SSA denied Plaintiff's applications initially and on reconsideration. Tr. at 85-86. Plaintiff requested an administrative hearing, which was held *via* video-conference on July 3, 2012. Tr. at 33-84. At the hearing, the ALJ accepted the testimony of Plaintiff, who was represented by counsel, and Ted Macy, a vocational expert ("V.E.").

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]References to the administrative record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found in the search box at the top of the page on the ECF toolbar.

On August 23, 2012, the ALJ issued a Decision denying benefits. Tr. at 16-26. Plaintiff filed a request for review, which the Appeals Council denied on November 20, 2013. Tr. at 1-5.

On January 15, 2014, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1.  On April 28, 2014, Plaintiff filed a brief on the merits.  ECF Dkt. #16. On June 24, 2014, with leave of the Court, Defendant filed a brief on the merits. ECF Dkt. #18.  A reply brief was filed on July 8, 2014. ECF Dkt. #19.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff, who was thirty-three years of age on the alleged onset date and thirty-four years of age at the hearing, suffered from degenerative disc disease of the lumbar spine, fibromyalgia, status-post 2003 gastric-bypass surgery, and degenerative joint disease, which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c). Tr. at 18. Plaintiff also suffered from bipolar disorder and personality disorder, which the ALJ characterized as non-severe impairments. Tr. at 18.  The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§404.1520(d), 404.1525, 404.1526 ("Listings"). Tr. at 19-20.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§404.1567(a), except that she can only sit for one hour at a time, at which point she will require a brief change in position before returning to the sitting position. Tr. at 20.

The ALJ ultimately concluded that Plaintiff could perform her past work as a account manager, dispatcher, receptionist, and data entry clerk (sedentary, semi-skilled).  She could also perform the representative occupations of table worker, bench hand, and final assembler (sedentary, unskilled). Tr. at 24.  As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

**III.**    **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of

-3-

the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V. ANALYSIS

Plaintiff advances three arguments in this appeal. First, Plaintiff contends that the ALJ's conclusion that Plaintiff can sit for one hour at a time is not supported by substantial evidence. Next, Plaintiff asserts that the ALJ's conclusion that Plaintiff does not need to recline during workdays in order to alleviate her pain is not supported by substantial evidence. Finally, Plaintiff argues that the ALJ erred when he did not credit her testimony at the hearing.

### A. Medical evidence

In July of 2009, Plaintiff presented to Dhruv R. Patel, M.D., at the Neurology Center, Inc. for treatment of headaches, and also complained of leg pain and weakness. Tr. at 328. Dr. Patel noted that EMG nerve studies were negative with no suggestion of any myositis or lumbar radiculopathies. Tr. at 321, 328. Plaintiff had normal leg strength, gait, and stance, and could stand from a seated position without support. Tr. at 330.

Two days later, Plaintiff presented to Ali Malick, M.D., at CHP Rheumatology, with complaints of lower back discomfort with leg weakness; an inability to recover from a squatting position, and tiredness on walking. Tr. at 574. Plaintiff had mild lower back tenderness; tenderness to palpation of the trochanteric bursa region; and four out of five strength in her lower extremities. Tr. at 575. Dr. Malick recommended a lumbar spine MRI. Tr. at 575.

In August of 2009, Plaintiff underwent a functional evaluation performed by an occupational therapist. Tr. at 555-560. Plaintiff had some limitation in her hip and knee motion and strength. Tr. at 556-557. The therapist opined that Plaintiff could occasionally push, pull, or carry twenty pounds and met the "Physical Demand Classification" for sedentary work. Tr. at 558. The therapist concluded that Plaintiff could never squat, kneel, crawl, or balance; rarely reach overhead, climb, and perform repetitive arm movements; and occasionally perform all other material handling

activities, with an ability to sit with her legs straight. Tr. at 558. However, her "actual sit" and "actual stand" tolerances were twenty minutes. Tr. at 559. The therapist stated that Plaintiff could not stand or sit for any length of time at once and was limited to standing or sitting for two hours each per workday. Tr. at 560. She could lift and carry up to ten pounds occasionally. Tr. at 560.

Later that month, Plaintiff presented to Dr. Malick with mild lumbar spine tenderness, four out of five strength at the hip flexors and extensors, and difficulty standing on her toes. Tr. at 582. A lumbar spine MRI performed the following week revealed a disc protrusion at L4-5 with facet hypertrophic changes, mild canal changes, moderate to severe stenosis, and moderate foraminal narrowing. Tr. at 521. It also revealed annular bulging and a small central disc protrusion at L5-S1. Tr. at 521.

On September 23, 2009, Pat Carey, a physical therapist, wrote an addendum to the August 2009 functional evaluation report, which stated that Plaintiff continued to complain of severe leg pain and weakness. Tr. at 554. Ms. Carey indicated that Plaintiff had weak leg muscles on testing, a limited ability to walk, and the capacity to sit for twenty minutes and stand for up to six minutes. Tr. at 554.  Ms. Carey opined that Plaintiff was unable to work at that time.

The same day, Plaintiff presented to Dr. Malick with complaints of weakness when walking short distances. Tr. at 660. Plaintiff had four out of five strength in her legs, difficulty with plantar flexion, and five to six fibromyalgia tender points. Tr. at 660. Dr. Malick diagnosed lower extremity weakness/severe lumbar canal stenosis, myalgia, and difficulty walking. Tr. at 660. He said that Plaintiff's leg weakness could not be totally attributed to her severe lumbar spinal stenosis, but that it could be a contributing factor. Tr. at 661. Dr. Malick discussed occupational therapy and completed disability paperwork. Tr. at 661.

In October of 2009, Plaintiff presented to Domingo Gonzalez, M.D., of NeuroSpineCare Inc., for treatment of lumbar spine pain. Tr. at 512-513. On examination, Plaintiff was very tender to palpation at the sacroiliac joint, tender to palpation at the facet joints at L4-5, and had pain on palpation of her knees. Tr. at 513. She could walk on her heels and toes without difficulty and had negative straight leg raising tests. Tr. at 513. Dr. Gonzalez diagnosed mechanical back pain secondary to mild degenerative spine changes, degenerative changes in both knees, and right

sacroililitis. Tr. at 513. He stated that she was not a surgical candidate and should be treated through pain management. Tr. at 513. Later that month, a physical therapist at Community Health Partners noted that Plaintiff had attended two appointments and then cancelled all future visits because she did not experience any reduction of her pain. Tr. at 376.

In November of 2009, Plaintiff presented to Parshotam C. Gupta, M.D., a physician in Dr. Gonzalez's office, and had tenderness at the right SI joint, but a well-preserved range of motion and negative straight leg raising tests. Tr. at 510. Dr. Gupta diagnosed right SI joint arthropathy, L4-5 foraminal stenosis, and L5 radiculopathy. Tr. at 510. Dr. Gupta prescribed a muscle relaxant and injections. Tr. at 510. Later that month, Plaintiff told Dr. Malick that the injections significantly reduced her pain. Tr. at 658. Plaintiff returned to Dr. Gupta on three occasions between December 2009 and February 2010. Tr. at 503-508.

In December of 2009 and February of 2010, Plaintiff had lumbar spine tenderness, limited and painful ranges of motion, and negative straight leg raising tests. Tr. at 503, 507. In January of 2010, Plaintiff had mild lower lumbar spine tenderness and pain on back extension, but otherwise normal ranges of motion and negative straight leg raising tests. Tr. at 505. Dr. Gupta diagnosed a severe facet joint arthropathy at L4-L5, moderate at L3-L4, and mild at L5-S1.

Between November of 2009 and February of 2010, Plaintiff underwent a series of injections including right sacroiliac injections, lumbar spine block injections at L4-5, and lumbar facet joint blocks at L4-5 and L5-S1. Tr. at 536, 540, 544-545, 551. In February of 2010, Dr. Malick examined Plaintiff and noted that she had severe degenerative joint disease of the spine, helped "somewhat" by epidural/facet blocks. Tr. at 552. Plaintiff complained of difficulty and pain on bending and pain after fifteen minutes of sitting. Tr. at 552. She had moderate lumbar spine tenderness with some radiation to the gluteal region, moderately decreased spine motion, and negative straight-leg raising tests. Tr. at 552. Dr. Malick diagnosed lumbar spinal stenosis/facet disease, musculoskeletal back pain, and limb pain; he prescribed medication. Tr. at 552. He observed that Plaintiff's condition had worsened and said that she could not work until her next functional capacity evaluation. Tr. at 553.

Between March and July of 2010, Plaintiff presented to Dr. Gupta on seven occasions. Tr. at 495-502, 721-725. During this period, she underwent several procedures including a right

sacroiliac joint block injection; radiofrequency ablation between L3 and S1; and epidural and medial branch blocks at L4-5 and L5-S1. Tr. at 522, 524, 527, 533. During an appointment in March of 2010, Plaintiff reported significant, but temporary, relief from a facet joint injection. Tr. at 501. She had right sacroiliac joint tenderness and pain on extension, but displayed otherwise normal ranges of motion and negative straight leg raising tests. Tr. at 501. Later that month, Plaintiff reported that a sacroiliac joint injection gave no relief, from which Dr. Gupta concluded that her pain came from a facet joint. Tr. at 499. She had tenderness at L4-5 and limited ranges of motion on extension and flexion, but otherwise well-preserved ranges of motion and negative straight leg raising tests. Tr. at 499.

During an appointment in April of 2010, Dr. Gupta noted that Plaintiff had iliac spine tenderness, but normal ranges of motion and negative straight leg raising tests. Tr. at 497. Later that month, Plaintiff reported twenty-percent pain relief with radiofrequency ablation. Tr. at 495. She had right sacroiliac joint and left paraspinal tenderness and pain on flexion and rotation, but displayed otherwise normal ranges of motion and negative straight leg raising tests. Tr. at 495. Dr. Gupta diagnosed lumbar spine stenosis with right radiculopathy, facet joint arthropathy, and right sacroiliac joint arthropathy. Tr. at 495. That same month, Dr. Malick found that Plaintiff had lumbar spine tenderness, decreased flexion, a positive right straight leg raising test, and mild discomfort on left straight leg raising. Tr. at 653.

In May of 2010, Plaintiff told Dr. Gupta that physical therapy had worsened her lower back pain, but that her ability to walk had improved. Tr. at 725. Plaintiff had lumbar spine tenderness, limited and painful extension and rotation, normal strength, and negative straight leg raising tests. Tr. at 725. Dr. Gupta recommended medial branch blocks. Tr. at 725.

The next month, Plaintiff reported that the branch blocks were not effective. Tr. at 723. She had pain and limitation on flexion, but otherwise normal ranges of motion and strength and negative straight leg raising tests. Tr. at 723. Dr. Gupta diagnosed lumbar spinal stenosis, controlled facet arthropathy, and right sacroiliac joint arthropathy. Tr. at 723. In July of 2010, Dr. Gupta noted that Plaintiff had lumbar spine tenderness and decreased flexion, but otherwise normal ranges of motion and negative straight leg raising tests. Tr. at 721.

-7-

Between May and June of 2010, Plaintiff attended eleven physical therapy appointments that resulted in improvement in her functioning, power, level of pain, and ranges of motion. Tr. at 692, 700. In September and October of 2010, Plaintiff presented to Dr. Gupta on two occasions. Tr. at 717-19. In September of 2010, Plaintiff complained of lower back pain radiating down the front of both legs and reported that her most recent injection was effective for two weeks. Tr. at 719. She had lumbar spine tenderness and decreased flexion, but normal strength and negative straight leg raising tests. Tr. at 719. A physical examination in October 2010 was similar, except that Plaintiff also had decreased extension. Tr. at 717.

Plaintiff returned to Dr. Gupta in November of 2011, with complaints of lower back pain radiating up her back and down her legs. Tr. at 714. She had sacroiliac joint tenderness and limited and painful lumbar extension and flexion, but otherwise normal spine motion and negative straight leg raising tests. Tr. at 714.

In February of 2011, Plaintiff returned to Dr. Malick and reported that pain medication gave fifty percent relief. Tr. at 652. She had moderate discomfort in the lower lumbar region with discomfort on the right side of her leg, especially when raising it. Tr. at 652. In March of 2011, Dr. Koricke, Plaintiff's psychologist, completed a questionnaire, in which he indicated that Plaintiff had trouble sitting comfortably during an entire fifty-minute session. Tr. at 674.

Plaintiff presented to Dr. Gupta on six occasions between March and August of 2011. Tr. at 702-13. In March of 2011, Plaintiff said she could not walk for more than one-eighth of a mile. Tr. at 712. She had mild lumbar spine tenderness, well-preserved and pain-free ranges of motion, normal strength, and negative straight leg raising tests. Tr. at 712. Examination results were similar in April, May, and June of 2011, except that Plaintiff had pain and reduced motion on extension, rotation, or both. Tr. at 708-711. In July of 2011, Plaintiff complained of lower back pain and said that a block injection had helped for two weeks. Tr. at 704. She had tenderness in her lower lumbar spine along the midline as well as in the paraspinal areas at L3-4 and L4-5. Tr. at 704. Plaintiff had negative straight leg raising tests and normal strength. Tr. at 704. Dr. Gupta recommended facet joint blocks at L3-4, L4-5, and possibly L5-S1. Tr. at 704. In August of 2011, Plaintiff reported that the facet joint block injections gave good pain relief for approximately ten days. Tr. at 702. She had lower

lumbar spine tenderness, decreased extension, flexion, and rotation, normal strength, and negative straight leg raising tests. Tr. at 702. Dr. Gupta diagnosed facet joint arthropathy at L3-4 and L4-5 and recommended radiofrequency ablation at L2, L3, and L4. Tr. at 702.

In September of 2011, Plaintiff presented to Dr. Malick with complaints of pain, particularly after sitting for thirty minutes. Tr. at 742. Dr. Malick noted that Plaintiff had a history of spinal stenosis/disc herniation at L4-5 and that a March 2011 MRI also showed a disc bulge with a lateral recess and neuroforaminal herniation causing impingement of nerve roots at L4 and L5. Tr. at 742, 846. Plaintiff had moderate lower lumbar spine tenderness and positive straight leg raising tests. Tr. at 742. Dr. Malick prescribed pain medication and a muscle relaxant. Tr. at 742.

Plaintiff presented to Dr. Gupta on four occasions between September of 2011 and April of 2012. Tr. at 870-871, 874-875, 879-882. In September of 2011, Plaintiff complained of very minimal pain in her lower back radiating to the left knee. Tr. at 881. She had limited extension and flexion, but normal strength and negative straight leg raising tests. Tr. at 881. In October of 2011, Plaintiff stated that she lifted up to twenty pounds frequently. Tr. at 879. She had moderate lumbar spine tenderness and limited extension, flexion, and rotation, but normal strength and negative straight leg raising tests . Tr. at 879.

In December of 2011, Plaintiff underwent epidural block injections at L4-5 and radiofrequency ablation. Tr. at 876-77. In February of 2012, Plaintiff reported pain relief with radiofrequency ablation. Tr. at 874. She had lumbar spine tenderness, but normal ranges of motion and strength and negative straight leg raising tests. Tr. at 874. Plaintiff underwent a right sacroiliac block the next month. Tr. at 872. In April of 2012, Plaintiff reported that the block injection gave significant relief, but that the left side was still painful radiating down her leg. Tr. at 870. She had tenderness in the left sacroiliac joint and facet joint with decreased ranges of motion in all directions . Tr. at 870. However, she displayed normal strength and negative straight leg raising tests. Tr. at 870.

### B. State Agency Assessments

In August of 2010, L. Torello, reviewed Plaintiff's medical records for the state DDS and provided an assessment of her physical limitations. Tr. at 594-601. Dr. Torello opined that Plaintiff

could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk two hours per workday; and sit for six hours per workday, but with the option to shift positions and rise momentarily every twenty to thirty minutes. Tr. at 595. Dr. Torello said that she could occasionally balance, stoop, and climb ramps and stairs, but never perform all other postural maneuvers. Tr. at 596.

On October 28, 2010, Thomas Evans, Ph.D., evaluated Plaintiff for the state DDS. Tr. at 604-08. Although the evaluation concerned Plaintiff's mental impairment, Dr. Evans observed that Plaintiff had no problems walking and did not appear to be in any type of physical distress throughout the entire interview. Tr. at 608. However, Dr. Evans's report does not document the length of time required for the examination.

### C. Hearing testimony

At the hearing, Plaintiff testified that she had some college education, and worked as a dispatcher, customer service representative, administrative assistant, data entry worker, and account manager. Tr. at 37. Plaintiff testified that she was enrolled in college between 2008 and 2011 taking mostly online classes. Tr. at 61. She said she last worked as an account manager and had to leave because she was experiencing burning pain in her legs and back, which prevented her from sitting for long periods of time. Tr. at 38. Plaintiff stated that she also had leg weakness and pain. Tr. at 48, 50.

Plaintiff's attorney noted that she was shifting in her chair and Plaintiff stated that this occurred all the time. Tr. at 52. Plaintiff guessed that she could sit for anywhere between ten and thirty minutes at a time, and up to two or three hours a day. Tr. at 52-53. However, she testified that she would need to lie down after sitting in order to alleviate the pain caused by continuous sitting. Tr. at 53. Moreover, once the pain began, walking provided her no relief. Tr. at 54. Plaintiff further testified that she typically reclined or perched during the day, and rarely sat on her tail bone. Tr. at 52. She reclined at home more than half of the day. Tr. at 53. Plaintiff testified that she could walk for twenty minutes at one time and be on her feet for a total of up to and hour-and-a-half in a day. Tr. at 53-54. At the time of the hearing, Plaintiff was prescribed Vicodin 10/650, which she took four times per day, and Zanaflex, a muscle relaxer, which she only took as needed. Tr. at 56.

At the hearing, the VE testified that Plaintiff would be capable of her past work, as well as the representative occupations identified above, if she was capable of sitting for one hour at a time. Tr. at 69. However, the VE conceded that all of the jobs identified "could be a problem" if the sit/stand option was limited to ten to fifteen minutes. Tr. at 69. Although the VE testified that some of the jobs might be available with employer modifications, he conceded that he did not know if those jobs would exist in significant numbers. Tr. at 69.

### D.     The ALJ's Decision

In concluding that Plaintiff was not disabled, the ALJ relied upon evidence in the record that established that Plaintiff's pain improved with treatment and that she often demonstrated full strength and movement in her back and negative straight leg raises. Tr. at 22. The ALJ further wrote that he discredited Plaintiff's testimony regarding her debilitating pain based upon her decision to discontinue physical therapy, insofar as physical therapy that she underwent later in the record provided some pain relief and improved strength in her legs. The ALJ also relied upon the fact that Plaintiff considered having a child in 2010 to conclude that her pain was not as severe as she claimed. Tr. at 22. Finally, the ALJ observed that Plaintiff's activities of daily living, which included driving a car, preparing meals, and working on a computer, belied her claim of disabling pain.

With respect to the medical evidence in the record, the ALJ concluded that the opinions of the occupational therapist that conducted the functional assessment in 2009, Ms. Carey, who provided the addendum to the 2009 functional assessment, and the agency physician – all of whom concluded that Plaintiff could not sit more than twenty minutes at a time – were at odds with the remainder of the medical evidence in the record. Once again, the ALJ cited examination results that revealed full strength and movement in Plaintiff's back, as well as a series of negative straight leg raise results, to conclude that the foregoing opinions were not supported by the medical evidence.

### E.     Opinion evidence

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion

-11-

of a treating physician is entitled to great deference. *Id.*; *Rogers, supra*, at 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

On the other hand, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' " *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.* citing 20 C.F.R. §404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* citing §404.1527(c)(6).

Finally, evidence from "other sources" may not be used to establish the existence of a medically determinable impairment or given controlling weight, however, the ALJ may use evidence from "other sources" to demonstrate the severity of the claimant's impairments and how it affects the claimant's ability to function. 20 C.F.R. § 404.1513(d)(1); *Cruse v. Comm'r*, 502 F.3d 532, 541 (6th Cir.2007. "Other sources" include nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists. *Id.* When considering opinions from non-medical sources who have seen a plaintiff in a professional capacity, the ALJ should look to several factors, including the opinion's consistency with other evidence, how long the source has known the individual, and how well the source explained his opinion. *Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807, 820 (N.D.Ohio 2009) (citing *Cruse, supra*, at 541.)

Here, Plaintiff relies upon the opinions of two therapists and a non-examining agency physician to demonstrate that there is a lack of substantial evidence supporting the ALJ's decision that Plaintiff can sit for one hour at a time  The ALJ considered the opinions in the record but concluded that the remainder of the medical evidence supported the conclusion that Plaintiff could sit for one hour at a time. However, the ALJ failed to identify the specific evidence in the record that shows that Plaintiff is capable of sitting for one hour. Although the ALJ referred generally to

strength testing and negative straight leg raise testing, the Court finds that the foregoing evidence does not constitute substantial evidence that Plaintiff is capable of sitting one hour at a time, with a brief change in position, which will allow her to return to the sitting position for another hour, throughout an eight-hour workday. Simply stated, the ALJ's decision is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole, supra.* Accordingly, this matter is remanded to the ALJ to provide further articulation and analysis at steps four and five of the sequential analysis.

### **F.    Credibility**

Finally, Plaintiff contends that the ALJ erred when he did not credit her testimony regarding debilitating pain. When disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, as Plaintiff appears to concede here, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

An ALJ is not required to accept a plaintiff's own testimony regarding her pain. *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). However, the ALJ discredited Plaintiff's testimony despite the fact that it was supported by the opinion evidence in the record. Insofar as this matter is being remanded to the ALJ for further consideration of his analysis

-13-

at steps four and five of the sequential analysis, the ALJ is further instructed to reconsider Plaintiff's testimony regarding her alleged debilitating pain.

## **VI. CONCLUSION**

For the foregoing reasons, the ALJ's decision is REVERSED and this matter is REMANDED to the ALJ for further articulation and analysis at steps four and five of the sequential analysis.

Dated: March 4, 2015

                                           */s/George J. Limbert*
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE